GEORGE W. HARTMANN *vs.* BOSTON HERALD-TRAVELER CORPORATION & another.

Suffolk.   February 2, 1948. — June 9, 1948.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Practice, Civil,* New trial, Judicial discretion.   *Malice.   Libel and Slander. Words,* "Malice."

Restatement by QUA, C.J., of principles of law, long established in this Commonwealth, governing the determination of questions raised by an exception to action by a trial judge on a motion to set aside a verdict as against the weight of the evidence.

Mere severity and vigor of expression, including ridicule, sarcasm and invective, found in writings as to conduct of the plaintiff relied upon by him as the basis of an action for libel, should not be confused with such an improper motive as would constitute malice where it appeared that the writings included no defamatory statement concerning the plaintiff of a wholly personal or private nature and did not abuse the defendant's privilege of fair comment.

If the motive actuating writings, published within the writer's privilege of fair comment but of vigorous and severe expression including ridicule, sarcasm, and invective, was solely to discredit the expressed opinions and objects of one participating in carrying on in 1943 and 1944 a "Peace Now" movement believed by the writer not only to be ill timed and utterly futile but, if not opposed, possibly disastrous to the morale of our civilian population and even of our armed forces in relation to carrying on World War II, such motive would not be improper and would not constitute malice rendering the writings libellous.

A judge, presiding at the trial of an action for libel against a newspaper columnist, did not abuse his discretion in setting aside a special finding by the jury that articles had been written and published by the defendant "with malice" and a verdict for the plaintiff, and in ordering a new trial limited to the question of malice, where the articles, although couched in vigorous and severe language, including ridicule, sarcasm and invective, had little tendency to indicate malice in the sense of an improper motive, and the judge believed it to be clear that the jury, who also had found that the defendant had not abused his privilege of fair comment, had misapprehended the case on the issue of malice.

TORT. Writ in the Superior Court dated January 29, 1945.

The action was tried before *Dowd*, J.

*A. A. Albert, & S. Goldstein* of New York, for the plaintiff.

*B. Aldrich,* for the defendants.

QUA, C.J. This is an action of tort for libel. From July 1, 1942, until June 30, 1944, the plaintiff was professor of educational psychology at Teachers College, Columbia University, but was on leave of absence and was serving as a visiting lecturer and tutor in psychology at Harvard. Beginning in July, 1943, the plaintiff was publicly active in, and "chairman" of, the "Peace Now" movement, an organization whose purpose was to secure an immediate peace with Germany and Japan through negotiation. He continued as "chairman" of the movement until it dissolved in October, 1944. The corporate defendant published a newspaper in Boston known as the Boston Herald. The defendant Cunningham wrote a daily column for the Herald on matters of public interest.

The alleged libels consisted of a series of articles written by Cunningham and published in the Herald between January 30, 1944, and September 29, 1944, inclusive, in which the author in robust and flamboyant language excoriated

"Peace Now" and the plaintiff's association with that movement. It is conceded that these articles disparaged the plaintiff and were defamatory in character. At the trial the case turned upon the defence that they were fair comment and criticism relating to a matter of high public concern and were published without actual or express malice on the part of either defendant. The trial judge submitted to the jury two questions: First, "Has the defendant Cunningham abused his privilege of comment?" and second, "Were the alleged articles written and published with malice?" The judge instructed the jury that if they answered both questions in the negative their verdict should be for the defendants, but if they answered either question in the affirmative their verdict should be for the plaintiff. The jury answered the first question in the negative and the second question in the affirmative, thus in substance finding that the privilege of fair comment had not been abused, but that the articles were published with malice. They found a general verdict for the plaintiff.

After the verdict the defendants moved that the answer of the jury on the issue of malice and the general verdict for the plaintiff be set aside as (among other grounds) against the weight of the evidence. The judge states that upon the hearing of this motion a question arose as to whether the two answers were mutually inconsistent, but that he was of opinion that in any event the second answer was against the evidence and the weight of the evidence. He therefore ordered that the second answer and the general verdict be set aside, that a new trial be had, limited to the question of malice, and that the jury's answer to the first question and their finding as to the amount of damages should stand. He has reported these orders to be determined by this court before further proceedings in the case. The parties have stipulated, in part, that if the plaintiff's exceptions to the setting aside of the jury's answer with respect to malice and to the setting aside of the general verdict should be overruled, judgment should be entered for the defendants. In the view we take, other alternatives contained in the stipulation become immaterial. If there

was no error of law in the setting aside of the jury's answer that the articles were written and published with malice, on the ground that the finding of malice was against the weight of the evidence, then under the stipulation judgment must be entered for the defendants.

We construe the judge's charge as showing that "malice" in the second question put to the jury meant so called actual or express malice, and meant something more definite than merely exceeding the privilege. The word was employed in a sense approaching its signification in popular usage, and without attempting a more complete definition, we can safely say that at least it required an improper motive.[1] See *Squires* v. *Wason Manuf. Co.* 182 Mass. 137, 141; *Doane* v. *Grew*, 220 Mass. 171, 177; Restatement: Torts, § 606. The judge did not intend that the second question should include the first. When the questions are construed as the judge intended them to be construed there is no inconsistency in the answers.

It is provided by G. L. (Ter. Ed.) c. 231, § 127, that "The court may, at any time before judgment, set aside the verdict in a civil action and order a new trial for any cause for which a new trial may by law be granted . . .." One of the most common and well recognized grounds in law for the setting aside of a verdict is that it is against the weight of the evidence. When a trial judge is called upon to determine whether a verdict is against the weight of the evidence, the question before him, under the practice in this Commonwealth, is by no means the same as that presented to him at the trial when a motion is made for a directed verdict. The judge can direct a verdict for one of the parties only when there is no evidence, more than a mere scintilla, upon which a verdict for the other party could rest. When some evidence worthy of consideration is present the judge must submit the case to the jury, even though it may appear to him that the preponderance of the evidence on one side is

---

[1] It is true that in one or two places in his charge the judge referred to possible recklessness in the publication. We do not think that he intended thereby to set up a test of malice apart from motive. We think that he referred to such recklessness as would indicate an improper motive. See *Gott* v. *Pulsifer*, 122 Mass. 235, 239.

so great that he would set aside a verdict rendered against such preponderance. *Niland* v. *Boston Elevated Railway,* 208 Mass. 476. *Hicks* v. *H. B. Church Truck Service Co.* 259 Mass. 272, 276. *Salem Trust Co.* v. *Deery,* 289 Mass. 431, 433. *Donovan* v. *Donovan,* 294 Mass. 94, 97. *DeAngelis* v. *Boston Elevated Railway,* 304 Mass. 461, 463. But when asked to set aside a verdict as against the weight of the evidence the judge must necessarily consider the probative force of the evidence and not merely the presence or absence of any evidence upon the disputed point. In a limited sense he decides a question of fact. He is limited because he ought not to decide solely on his own opinion of the weight of the evidence as if he had heard the case without a jury. He may set aside the verdict only if he is satisfied that the jury have failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law. *Scannell* v. *Boston Elevated Railway,* 208 Mass. 513; *Bartley* v. *Phillips,* 317 Mass. 35, 40–41, and cases cited. However, the process of applying this standard is deemed to be an exercise of discretion by the trial judge, and when the case reaches this court we can disturb his action only if we in turn are satisfied that he has abused his discretion. "It is doubtful whether any rule of practice has been more frequently stated than the general rule that the granting or refusal of a new trial on the ground that the verdict is against the weight of the evidence rests in the discretion of the judge. To attempt to collect the cases would be a waste of effort. In some of them occurs the unqualified statement that the action of the judge cannot be reviewed on exceptions. . . . This statement is sufficiently accurate where no peculiar circumstances appear. Other cases recognize the possibility that abuse of discretion . . . might support an exception." *Perry* v. *Manufacturers National Bank,* 315 Mass. 653, 656. We can find abuse of discretion by the trial judge only by deciding "that no conscientious judge, acting intelligently, could honestly have taken the view expressed by him." *Davis* v. *Boston Elevated Railway,* 235 Mass. 482, 502. *Long* v. *George,* 296 Mass. 574, 578–579. *Palma* v. *Racz,* 302 Mass. 249, 251. *Kinnear* v. *General*

*Mills, Inc.* 308 Mass. 344, 349. *Bartley* v. *Phillips*, 317 Mass. 35, 43. Abuse of discretion in granting or refusing a new trial can so seldom be found that actual instances in whic  this court has set aside the action of the trial judge on that ground are almost nonexistent, and it has repeatedly been stated that occasions when this court can do so are exceedingly rare. *Berggren* v. *Mutual Life Ins. Co.* 231 Mass. 173, 176. *Hallett* v. *Jordan Marsh Co.* 240 Mass. 110, 112. *Thorndike, petitioner,* 254 Mass. 256, 259. *Menici* v. *Orton Crane & Shovel Co.* 285 Mass. 499, 502. *Bresnahan* v. *Proman,* 312 Mass. 97, 101–102. *Logan* v. *Goward,* 313 Mass. 48, 51–52. *Bartley* v. *Phillips,* 317 Mass. 35, 44. *Commonwealth* v. *Gricus,* 317 Mass. 403, 405. *Cohen* v. *Peterson,* 320 Mass. 315, 316. See *Sharpe, petitioner,* 322 Mass. 441, 444. Such is the burden which the plaintiff must carry in this case.

We have been inveigled into the foregoing restatement of principles long established in this Commonwealth partly because much of the plaintiff's argument tends to show that he has not understood them and partly because it is necessary to keep them constantly in mind for the purpose of defining the precise issue before us in this somewhat unusual case. It is also necessary to keep constantly in mind that the jury have in substance found that, apart from an improper motive, the defendant Cunningham did not abuse his privilege of fair comment. Fair comment may be severe and may include ridicule, sarcasm, and invective. *Hubbard* v. *Allyn,* 200 Mass. 166, 170. Cunningham employed all of these and more. But severity and vigor in expression, whatever evidential effect they may have, are not to be confused with malice in motive.

Certain outstanding facts are either indisputable or are practically undisputed and form the background against which the issue of malice must be judged. The "Peace Now" movement was active during the period preceding the climax of the greatest war in history — a period in which this country was straining to its utmost to prepare a military force adequate to avert the catastrophe of our own defeat and to insure the defeat of our enemies, who

were then still in the full tide of success and in possession of their vast ill gotten conquests. The object of "Peace Now" was to induce this country to offer terms 'of peace to our enemies and to enter into immediate communication with them for the purpose of negotiating peace. The movement operated by holding meetings, disseminating literature, and endeavoring to secure active adherents. Some of the propaganda put forth was highly critical of the aims, methods, and sincerity of our own government. One communication, addressed to certain religious leaders, went so far as to ask them "to publicly request all the followers of Christ under your banner at once to lay down their arms and cease supporting this war," adding "The church is strong enough to stop the war if it exert itself." The plaintiff wrote that this communication was "fine." One of the pamphlets urged us to "face the fact" that the war was "a betrayal" of "our boys who are fighting it" and asserted that "Our fighting men are the helpless victims of the most horrible crime in history." Other publications were in a similar vein. The plaintiff testified that he was sympathetic with these statements. Before beginning to write the articles the defendant Cunningham does not appear to have had any contact of any kind with the plaintiff. Cunningham testified that he first saw the plaintiff at the trial of this case, and that he bore no personal animosity or ill will toward him. Nowhere in the evidence is there the slightest suggestion that these two men had in any manner come into opposition or collision with each other. Cunningham, with other writers, had been called to Washington and at a conference with high military and naval authorities had been requested to do all he could in his speeches and writings "to help morale." The burden of proving actual malice was upon the plaintiff. *Doane* v. *Grew,* 220 Mass. 171, 182. *Bander* v. *Metropolitan Life Ins. Co.* 313 Mass. 337, 344.

It is plain that, if the articles were honestly and sincerely written, Cunningham entertained a firm belief that the "Peace Now" movement was not only ill timed and utterly futile but that, if not strenuously opposed, it might become

disastrous to the morale of our civilian population and even of our armed forces. If he entertained this belief, he might well consider it his patriotic duty to use his pen to the utmost of his ability to destroy the movement and to discredit the expressed opinions and objects of those who were carrying it on. Such a motive on his part would not be an improper one and would not constitute malice.

A careful reading of the articles fails to disclose any defamatory statements concerning the plaintiff of a wholly personal or private nature. All relate in some manner to his connection with "Peace Now." While the issue of truth is not directly before us, it is proper to say, as bearing on malice, that such statements as can be considered defamatory of the plaintiff consist almost entirely of denunciation and characterization expressly founded upon the undisputed facts of the "Peace Now" movement and of the plaintiff's connection with it. Most of them apply to others in the movement as well as to the plaintiff. Few, if any, can be correctly described as pure statements of fact as to the truth of which there is doubt or such as would be likely to be made with a belief in their untruth. Illustrative of matter of which the plaintiff complains are statements or implications in the several articles that "Peace Now," of which the plaintiff was the "leading local disciple," was giving aid and comfort to the enemy; that "any ordinary citizen" speaking and writing as the plaintiff had done "would long since have had business with the F. B. I."; that the movement was drawing some people "of anti-Semitic, Christian Front and even pro-Nazi and pro-Jap leanings"; that the plaintiff was two years behind the trend of American thought, and "we can but wonder what kind of psychology he professes in his classroom"; that he was a "befogged professor"; that talk of negotiated peace was "contrary to United Nations policy and . . . [was] therefore subversive"; that one who dealt in it was "trading with the enemy"; that "Peace Now" was "a sect of sanctimonious theopathetics"; that the plaintiff was "wearing a borrowed Harvard faculty Mother Hubbard over a spiritual sash from the enemy"; that he was

"slightly fogged in the apse," and that, if he was not, "the F. B. I. might do worse than drop a little of his ideo-theological juice onto some of its litmus and see what makes"; that "Peace Now" could "make headway only by cracking the home front"; that its "preachments" could "upset the men in uniform" and "sabotage the spirit of the less stalwart of the relatives"; that "Peace Now" was "dangerous to the common good"; that "the F. B. I. should tenderly barn . . . [the advocates of "Peace Now"] in somewhere for the duration"; that "the Prof. and his disciples" tried to hang out posters seeking to capitalize words of the Pope, "which you might as well say they stole"[1]; that the so called "Dies Committee," a committee of Congress investigating unAmerican activities, had damned "these pseudo religionists . . . as 'an unAmerican group whose activities are calculated to interfere with the successful prosecution of the war'" and "are 'clearly seditious, and tend toward the encouragement of treason'"; that this committee had reported that "Peace Now" "'involved a plan for mass treason which is truly colossal in its conception'"; that "Peace Now" was "the creation of a mysterious alien," one Collett, who, having come from Oslo with a passport from the Nazi controlled police department, "has at least the faint smell of the Nazi agent about him"; that the plaintiff was at most "a collaborator" and seems to have been "a convert" and "a blind"; that the question how the plaintiff and Collett found each other naturally came to mind; that the author felt sorry for those who had thought the idea of peace now "a sincere emotion of true disciples of the Prince of Peace"; and that the plaintiff had either been a conscious party to what official congressional investigators called a subversive movement or "he's too dumb to know that he was being used in one . . .. If that's faculty ornamentation, I'm Shakespeare."

Notwithstanding the forcefulness and sharpness of the foregoing and other expressions they have little tendency

---

[1] This characterization seems to us well confirmed by evidence that the plaintiff and others attempted to advertise by means of posters quoting words of the Pope so wrenched from their context as to give a thoroughly false impression of their meaning.

to indicate malice in the sense of an improper motive which would destroy the privilege the defendants enjoyed to publish facts and opinions about a movement which in time of war saw fit to range itself squarely against the announced policy of the government and to go as far as "Peace Now" went in its efforts to defeat that policy. Beyond the content and tone of the articles there is nothing in the case to indicate malice. The record shows that the confusion in the use of the word malice which has bedeviled the law of defamation from its very beginning was not wholly absent at the trial.[1] The jury may have confused vigorous condemnation expressed in rugged language with malice in motive. The trial judge saw and heard the defendant Cunningham and had an opportunity to form an opinion of his purpose and sincerity. If the judge believed it to be clear, as evidently he did, that the jury had misapprehended the case on the issue of malice, we cannot say (recurring to the criterion hereinbefore set forth as the measure of our own duty) "that no conscientious judge, acting intelligently, could honestly have taken the view expressed by him."

There was no evidence of malice on the part of the corporate defendant in any way distinct from that applicable to the defendant Cunningham.

In accordance with the stipulation the entry must be

*Judgment for the defendants.*

---

[1] It is noteworthy that the American Law Institute has restated the law of defamation without using the word malice. Restatement: Torts, cc. 24–27.