**William Gogerty, Plaintiff-Appellee, v. Meyer Covins, Defendant-Appellant.**

**Gen. No. 9,963.**

Third District.

February 18, 1955.

Released for publication March 7, 1955.

Lowenstein & McClain, of Danville, and Craig & Craig, of Mattoon, for appellant; J. E. Horsley, of Craig & Craig, of Mattoon, of counsel.

Bookwalter, Carter, Gunn and Hickman, of Danville, for appellee; I. Ray Carter, and R. Z. Hickman, both of Danville, of counsel.

MR. PRESIDING JUSTICE CARROLL delivered the opinion of the court.

This is an action brought against the Vermilion County Star, Fred Smith and Meyer Covins as defendants to recover damages for publication of an alleged libel. Before trial the complaint was dismissed as to the defendants, Vermilion County Star and Fred Smith.

The complaint is in two counts and in substance alleges that plaintiff was a city commissioner of Danville, Illinois for five years prior to April 6, 1953; that on

April 7, 1953 he was nominated as a candidate for supervisor of the Town of Danville in said county; that on March 27, 1953 the defendants published the alleged libelous articles in a newspaper called the Vermilion County Star; that one of said articles, in the form of an advertisement, is as follows:

"THIS IS THE CHECK . . .
    THAT didn't clear through City accounts though it paid for dogs bought from the City pound.
    THAT Hap Gogerty mentioned in his Feb. 16 radio talk.
    THAT was re-endorsed by Homer Abney, Gogerty's garbage superintendent, and cashed at a local store.

---

MORGANTOWN, IND., April 26, 1952   No.——
                                    71–8
                First State Bank ——
                                    71
Pay to the
Order of V. D. Seibert                    $45.00

                                    no
Forty-five and ....................—— Dollars
                                    100
For 30 dogs

                        H. K. Zook

---

                    Cancellation stamps

---

WHAT ABOUT IT GOGERTY?
    Note:  Gogerty says talk of his "dog fund" is a "whispering campaign." Twice we tried to speak out through the local daily and both times were refused.
                        Better Government Committee."

that on the same date defendants caused a certain editorial to be published in the said newspaper reading as follows:

"Gogerty himself was seen by investigators on July 5, 1952, to receive $24 in bills from the dog catcher, Virgil D. Seibert, minutes after Seibert had received the money from the dog buyer, H. K. Zook, Morgantown, Ind. Seibert swears that $12 additional was turned over during the month but that the city books show only $20.50 received for that month."

that said publications were intended to mean and impute that plaintiff was a dishonest official of the City of Danville; that he was receiving money properly belonging to said city and not accounting therefor; that he was unfit to fill the office of supervisor, whereby he was greatly injured in his good name, credit, reputation and standing in the community. The complaint further alleges that the publications as set forth therein are false and untrue.

The complaint then recites that the defendants intended to impute by the said publications that the check mentioned therein was given in payment for 30 dogs from the city pound; that the proceeds thereof belonged to the City of Danville; that plaintiff received the money represented by said check; that 2,000 copies of the newspaper were distributed; that many citizens of Danville who prior to said publications believed in plaintiff's honesty and integrity, after publication of the same ceased to believe in his honesty and integrity by reason of which the plaintiff lost his good reputation and has been deprived of divers gains and profits.

The complaint also alleges that the defendants published a printed pamphlet or dodger containing the same alleged libelous matter as appeared in the advertisement published on March 27, 1953; that 10,000 copies of the said dodgers were distributed among the citizens and voters of the Town of Danville; that de-

fendants intended by the publication of said dodger to impute the unfitness of plaintiff for the office of supervisor and either receiving, misappropriating or embezzling monies belonging to the City of Danville; that the honesty, integrity and reputation of the plaintiff was impeached; and that thereby the plaintiff has been greatly injured in his good name, credit and reputation.

The defendant answered the complaint denying the allegations thereof and filed a counterclaim charging plaintiff with making a libelous radio broadcast over radio station WDAN located in Danville, Illinois, on February 16, 1953, in which broadcast plaintiff made the following statements concerning the defendant:

"Getting on to the speaker, whether the speaker knowingly or not knew that he was the climax to a carefully laid political plan of my opponent, plans that started several months ago. Plans that are not carried out, or carried on, with the intention of winning, plans that are carefully laid by vicious minds that are trying to pay me back, and I might add so low that are aimed at hurting my family and my friends that I want to bring out these plans and are paying me back for just two years ago when I was subpoenaed by the Grand Jury to testify on City Hall activities, with the disposal of the used materials to this same junk dealer Meyer Covins who is using every device that his immature and impoverished mind to help his father-in-law George Freeman get elected and get nominated tomorrow."

The issues were joined and the causes were tried by a jury. The defendant moved for a directed verdict at the close of the plaintiff's case and renewed such motion at the close of all of the evidence, both of which motions were overruled and the jury returned a verdict for plaintiff in the amount of $6,000. A verdict in favor of the plaintiff and counterdefendant was returned on the counterclaim. Defendant's motions for a new trial, judgment notwithstanding the verdict and in arrest of judgment were denied and judgment entered

on the verdicts. Defendant has appealed from these judgments.

Consideration will be first given to the defendant's contention that the trial court erred in refusing to instruct the jury to find a verdict in his favor because of the failure of plaintiff to show malice and damage or injury to him as the proximate consequence of the alleged libelous publications.

The record indicates without dispute that plaintiff, at the time of the publications of the alleged libelous articles, was a candidate for the office of supervisor of the Town of Danville; that defendant and others whose suffrage plaintiff sought were opposed to his candidacy; that in furtherance of such opposition they formed the Better Government Committee; that in a radio address delivered more than a month prior to the publication of the articles in question, plaintiff referred to the check mentioned in the newspaper advertisement; that the Better Government Committee caused the advertisement concerning the check to be published in reply to certain references thereto made by plaintiff in his said radio address; that the advertisement and dodger contained a copy of the check but mentioned no connection of plaintiff therewith except to state that it was the check to which he referred in his radio talk on February 16; that the editorial as set out in the complaint does not charge the plaintiff with being a dishonest official nor with receiving and failing to account for public funds; that the complaint contains no allegations showing special damages or the presence of actual malice.

In view of the foregoing the controlling factor in determining the decision to be made on this appeal is whether the publications referred to in the complaint are libelous per se.

■ ■ Apparently the complaint was drawn and the case tried upon the theory that the published articles were libelous per se. Such deduction follows from the

80

fact that plaintiff alleges no special damages in his complaint nor did he attempt to prove same upon the trial. If the language used in the articles is not libelous per se then plaintiff was required to allege in his complaint that special damages resulted from the publications thereof, and the specific nature of such damages and make proof thereof on the trial. Campbell v. Morris, 224 Ill. App. 569. A general allegation as to damages is insufficient. Such damages must be alleged with particularity. Life Printing & Publishing Co. v. Marshall Field III, 324 Ill. App. 254. The complaint herein appears to be lacking in that regard as it alleges only generally that plaintiff suffered damages as a result of the publications.

■ It is plaintiff's contention that the advertisement and editorial charged him with larceny or embezzlement. If such contention is to be sustained a basis therefor must be found in the language used in the articles. The question with which this court is concerned is not whether the words employed were capable of conveying the meaning ascribed thereto by plaintiff but whether such words according to their ordinary meaning are libelous. Parmelee v. Hearst Pub. Co., Inc., 341 Ill. App. 339; Ogren v. Rockford Star Printing Co., 288 Ill. 405; Kulesza v. Chicago Daily News, Inc., 311 Ill. App. 117.

■ ■ We cannot agree that an ordinary reasonable reader would understand the language of the advertisement, editorial and handbill taken together or separately to charge plaintiff with embezzling money of the City of Danville. There appears to be no ambiguity in the words used in the advertisement. It plainly states that the check reproduced therein is the one to which plaintiff had referred in a radio talk and asks plaintiff the question "What about it, Gogerty?" Because it may have conveyed some particular meaning to plaintiff is immaterial insofar as determining the meaning which would be attached thereto by the ordi-

81

nary reader. Furthermore, it was published during a political campaign and naturally would be understood by the average intelligent citizen of Danville to pertain only to an issue in such campaign. It concerned a certain check stating that the same did not clear through city accounts though it paid for dogs bought from the city pound, but was re-endorsed by Homer Abney and contained no imputation of wrongdoing on the part of the plaintiff. It did not state that plaintiff ever had the check in his possession or that he received any of the proceeds thereof. To attach thereto the imputation suggested by plaintiff would be to extend the meaning of the words by innuendo far beyond their reasonable construction. The same observation may be made with reference to the editorial, which in substance states that an investigator saw Gogerty receive $24 in bills from the dog catcher, Virgil D. Seibert. It does not state that the money was the proceeds of the check and fails to state that plaintiff appropriated the $24 to his own use. When, as in this case, it is contended the words are libelous per se, the innuendo in the complaint cannot be used to add to the plain meaning thereof, but must be regarded as surplusage. Parmelee v. Hearst Pub. Co., Inc., supra.

In judging whether the language of the publication is reasonably susceptible of the meaning which the plaintiff attaches thereto it must be borne in mind that a candidate for elective public office is submitting his qualifications to the electorate, and the members thereof may freely comment on his conduct and actions. Our Supreme Court in Ogren v. Rockford Star Printing Co., supra, stated the above rule as follows:

"When anyone becomes a candidate for a public office, conferred by the election of the people, he is considered as putting his character in issue, so far as it may respect his fitness and qualifications for office, and everyone may freely comment on his conduct and ac-

tions. His *acts* may be canvassed and his *conduct* boldly censured."

In the instant case plaintiff, who was a city commissioner, became a candidate for the office of supervisor of the Town of Danville. Therefore, his conduct and actions, as the same related to his fitness and qualifications for the office he sought, became a subject which the public might investigate, discuss and criticize. Likewise, the defendant and other members of the public were free to comment thereon. Tiernan v. East Shore Newspapers, Inc., 1 Ill.App.2d 150.

Construing the words used in both the advertisement and editorial according to their plain and ordinary meaning, we are of the opinion that the same did not exceed the limits of fair comment permitted in a matter of public interest.

■ Since the language of the publications does not appear to be libelous per se, it was incumbent upon the plaintiff to plead or prove malice or special damages. The complaint herein did not allege special damages and the record herein discloses that plaintiff failed to show malice and did not plead or submit evidence of special damages. It follows, therefore, that the motion of the defendant to direct a verdict in his favor should have been allowed.

■ Defendant herein seeks reversal of the judgment for plaintiff on the counterclaim. What has been said herein with reference to the alleged libelous publications set out in the complaint is applicable to the portion of plaintiff's radio broadcast which defendant claims is libelous per se. We cannot agree with defendant that the statement that ". . . this same junk dealer Meyer Covins who is using every device that his immature and impoverished mind to help his father-in-law George Freeman get elected and get nominated tomorrow" would be construed by the average listener to mean that the defendant was dishonest in his busi-

ness dealings with the public and the City of Danville. The language set out in the counterclaim was not actionable per se. The verdict as to the counterclaim should not be disturbed.

For the reasons indicated, we are of the opinion the judgment for plaintiff should be reversed and that entered on the counterclaim affirmed.

Reversed as to judgment on complaint.

Affirmed as to judgment on counterclaim.