Nathaniel A. DENMAN, Plaintiff, Appellant,

v.

Ernest J. WHITE, Jr., Defendant, Appellee.

No. 6066.

United States Court of Appeals First Circuit.

April 24, 1963.

Nathaniel A. Denman, pro se.

Mark R. Joelson, Atty., Dept. of Justice, with whom John W. Douglas, Acting Asst. Atty. Gen., W. Arthur Garrity, Jr., U. S. Atty., and Morton Hollander, Atty., Dept. of Justice, were on brief, for appellee.

Before HARTIGAN and ALDRICH, Circuit Judges, and GIGNOUX, District Judge.

GIGNOUX, District Judge.

This action was brought by appellant to recover damages for defamation from appellee, a colonel in the United States Air Force. The district court entered summary judgment in favor of appellee on the ground that the allegedly defamatory statements had been made in the discharge of appellee's official duties, and were therefore absolutely privileged under the rule of Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) and Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959) and related cases.

On January 15, 1961, Texas Tower 4, a United States Air Force radar installation located in the Atlantic Ocean seventy miles southeast of New York City, collapsed during a storm and fell into the sea, causing the death of 28 Air Force and civilian personnel. On January 16, a newspaper, the New Bedford Standard-Times, published a number of comments by appellant, a registered professional engineer of Falmouth, Massachusetts, which were critical of the conduct of the Air Force in the erection and maintenance of the tower. The article, which was headlined "Cape Engineer Charges Tower Flaw Two Years Old," quoted appellant as charging that the Air Force "was aware of, or at least surmised, structural damage of Texas Tower 4" as far back as 1958 or early 1959.

At this time, appellee was the Commander of Otis Air Force Base, Massachusetts. One of the units then stationed at Otis Air Force Base was the 4604th Support Squadron, which unit included Texas Tower 4.

On the afternoon of January 16, the assistant to the editor of the Standard-Times telephoned appellee and requested a statement with respect to appellant's charges. As a result, a conference was held in appellee's office at Otis Air Force Base on the morning of January 17, which was attended by the reporter who had interviewed appellant, appellee, and several other Air Force officers, including the Commander of the 4604th Support Squadron and the Base Information Officer. It was during this conference that appellee made the allegedly defamatory statements upon which this action is predicated. These statements, as reported in the January 17 issue of the Standard-Times, under the headline "Otis Officer Calls Tower Criticism 'Irresponsible'," were to the effect that appellant's charges that Texas Tower 4 had been unsafe since 1958 were "irresponsible" and "distortions of the fact," the only effect of which would be to add to the grief of the families of the 28

men aboard the structure when it collapsed and disappeared.

Appellant then brought this suit in the Barnstable County, Massachusetts, Superior Court alleging that appellee had "publicly, falsely, and maliciously" defamed him "willfully and knowingly, and not in the performance or furtherance of any fiduciary or professional obligation or status * * * but * * * for the fulfillment of his own personal design and intent." On appellee's motion, the cause was properly removed to the United States District Court for the District of Massachusetts under 28 U.S.C. § 1442a.

In the district court, appellee filed an answer asserting, *inter alia*, that the statements complained of had been made in the performance of his official duties. He subsequently filed a motion for summary judgment, with three supporting affidavits. One, by appellee himself, recited that appellee at the time of his statements was Commander of Otis Air Force Base; that one of the units assigned to the Base was the 4604th Support Squadron, which included Texas Tower 4; and that appellee had made the statements complained of in the performance of his official duties as Base Commander, under the authority of A.F.R. 190–6,[1] in response to a newspaper request for information in regard to the collapse of Texas Tower 4. A second affidavit, by appellee's commanding officer, Major General Henry Viccellio, confirmed that appellee was the Commander of Otis Air Force Base on January 16 and 17, 1961 and that one of his responsibilities as Base Commander was operating the Base Information Program in accordance with A.F.R. 190–6. The third affidavit, by the Director of Information Services, Office of the Secretary of the Air Force, Major General Arno H. Luehman, stated that affiant was "responsible for planning, establishing and supervising the Air Force Information Program as established by Air Force Regulation 190–6"; that appellee as Base Commander had the duty, either directly or through his Information Officer, to furnish news media at their request with information concerning matters affecting his command; and that in his capacity as Base Commander it was appellee's duty "in respect to the charges attributed to [appellant in the Standard-Times] * * * and the resulting query * * * of that newspaper, * *

---

1. A.F.R. 190–6 (effective December 2, 1960) is entitled "Air Force Information Program," and provides in pertinent part:

1. *What the Information Program Is.* The commander uses the information program to keep his personnel informed, and motivated for maximum production and service, and to fulfill the obligation of keeping the American public informed of Air Force activities. The four fields of operations are internal information, public information, community relations, and historical activities.

* * * * *

b. *Public information* activities consist of collecting, analyzing, and passing along to the public unclassified information about the Air Force and its activities (see AFR 190–12). This aspect of the program is based on two principles:

(1) The full record of the Air Force should be available to the American people, subject only to security restrictions.

(2) The Air Force has a responsibility to report to the American people on its use of resources, both human and material.

* * * * *

2. *Who is responsible.*

* * * * *

(d) *Air Force Bases.* The commander of each Air Force base or similar organization will:

(1) Operate the information program within his command.

(2) Coordinate the information actions and activities of tenant and attached units. This responsibility includes providing support and facilities for the conduct of information activities.

* * * * *

(f) *Tenant Units.* The commander of each tenant organization will coordinate information activities with the base commander.

* * * * *

to present what he knew, or believed to be a factual presentation of the circumstances surrounding the printed charges, availing himself of personnel within his jurisdiction who were knowledgeable of the facts and circumstances." In reply, appellant filed affidavits of himself, of Bruce A. Grassfield, who had been Staff Procurement Officer on the Base, and of Elnor M. Phelan, the widow of one of the men lost in the disaster.[2] The district court granted appellee's motion for summary judgment. This appeal followed.

In Barr v. Matteo, supra, and Howard v. Lyons, supra, the two Supreme Court cases upon which the district court relied in support of its ruling, the Supreme Court held that individual officers of the United States Government, who issued public statements in the discharge of their official duties, were protected by an absolute privilege from personal liability in defamation actions. The justification for this privilege was stated in the opinion of Mr. Justice Harlan in the Barr case to be that " * * * officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." 360 U.S. at 571,[3] 79 S.Ct. at 1339, 3 L.Ed.2d 1434.

2. The competent allegations in appellant's affidavits raise no controverted issues of fact material to this appeal. For example, the pertinent averments in appellant's own affidavit do no more than assert by way of conclusion that appellee's statements were not made pursuant to his official duties, obviously not a matter within appellant's personal knowledge. Fed. R.Civ.P. 56(e). Cf., Preble v. Johnson, 275 F.2d 275, 279 (10th Cir. 1960). Similarly, the affidavit of Elnor M. Phelan simply recites that appellee's wife had informed her that appellee "had nothing to do with the Texas Tower Squadron", a matter neither within affiant's personal knowledge nor admissible in evidence. Fed.R.Civ.P. 56(e).

3. The classic statement of the reason for the privilege is that of Learned Hand, C. J., in Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), as quoted in part by Justice Harlan in Barr v. Matteo, 360 U.S. at 571–72, 79 S.Ct. at 1339–1340, 3 L.Ed.2d 1434:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. * * *

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting

■ Appellant here does not question the Barr doctrine, but rather urges upon us that the rule of that case is not applicable to the facts of this case because appellee's statements were not made by him in the discharge of his official duties. We find no merit in this contention. A.F.R. 190–6 [4] establishes an Air Force Information Program, a basic objective of which is "to fulfill the obligation of keeping the American public informed of Air Force activities." A.F.R. 190–6 (1). It states that this aspect of the program is to consist of "collecting, analyzing, and passing along to the public unclassified information about the Air Force and its activities." A.F.R. 190–6 (1) (b). The regulation also designates the persons responsible for carrying on the information program, and with respect to Air Force bases it specifically provides that the base commander will "(1) Operate the information program within his command" and "(2) Coordinate the information actions and activities of tenant and attached units." A.F.R. 190–6(2) (d). The commander of each tenant organization is similarly directed to "coordinate information activities with the base commander." A.F.R. 190–6(2) (f). It seems clear that under A.F.R. 190–6 it was within appellee's authority as Commander of Otis Air Force Base to release to the public unclassified information relative to the activities of units assigned to the Base, both those units which were within his primary, or tactical, command and those units which were subject to his jurisdiction as Base Commander because stationed at the Base as tenant or attached units.[5] Since appellee's published comments on the Texas Tower disaster related directly to an activity of an Air Force unit which was assigned to appellee's base, we have no doubt that, as certified by his superior officers, they were authorized, if not required, by A.F.R. 190–6.

Appellant argues, however, that since Air Force Regulation 190–10 imposes on the commander of the base nearest an accident the responsibility of releasing information as to accidents as quickly as possible, and since there were other bases nearer the location of Texas Tower 4 than Otis Air Force Base, the whole matter of the collapse of Tower 4 was no official concern of appellee.[6] Even if appellant is correct that some other base commander had the primary duty of releasing information as to the accident, we agree with the district court that the matter was still one which concerned a unit assigned to appellee's Base, and on which he was clearly authorized by A.F.R. 190–6 to release information to the press. Upon this point, the opinion of Mr. Justice Harlan in Barr v. Matteo, supra 360 U.S. at 575, 79 S.Ct. at 1341, 3 L.Ed.2d 1434, is pertinent:

"That petitioner was not *required* by law or by direction of his superiors to speak out cannot be controlling in the case of an official

within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. * * * "

4. See note 1, supra.

5. In addition to being Base Commander, appellee was also Commander of the 551st Aircraft Early Warning and Control Wing, which was stationed at the Base. The 4604th Support Squadron was not subject to appellee's tactical command in his latter capacity because it was a part of another wing, located at Stewart Air Force Base, New York. However, it is not disputed that the 4604th Support Squadron, being attached to the Base, was within appellee's jurisdiction as Base Commander.

6. A.F.R. 190–10, which is entitled "Release of Information on Accidents," provides in pertinent part:
"2. Who Will Release Information. The commander of the base nearest the accident will give news media all releasable information as quickly as possible."
Appellant's affidavit raises an issue of fact as to whether or not Otis Air Force Base was the nearest base to the site of the disaster, an issue which, however, becomes immaterial in view of our holding as to the applicability of A.F.R. 190–6.

of policy-making rank, for the same considerations which underlie the recognition of the privilege as to acts done in connection with a mandatory duty apply with equal force to discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority."

Even if, however, it be conceded that appellee's conduct in releasing information to the press concerning the Tower 4 collapse was not in technical compliance with applicable Air Force regulations, we think it clear that the Supreme Court in Barr v. Matteo, supra, "expressly rejected a rigid scope of duty, as literally prescribed by rule or regulation, in favor of a more generalized concept of line of duty." Preble v. Johnson, supra note 2, 275 F.2d at 278. The opinion of Mr. Justice Harlan states:

> "The fact that the action here taken was within the outer perimeter of petitioner's line of duty is enough to render the privilege applicable, despite the allegations of malice in the complaint * * *." 360 U.S. at 575, 79 S.Ct. at 1341, 3 L.Ed.2d 1434.

And again, the concurring opinion of Mr. Justice Black concludes:

> "It is enough for me here that the press release was neither unauthorized nor plainly beyond the scope of Mr. Barr's official business, but instead related more or less to general matters committed by law to his control and supervision. See Spalding v. Vilas, 161 U.S. 483, 493, 498–499 [16 S.Ct. 631, 40 L.Ed. 780]." 360 U.S. at 577–78, 79 S.Ct. at 1343, 3 L.Ed.2d 1434.

Thus, as stated by Murrah, C. J., in Preble v. Johnson, supra, it seems fairly plain that under the rule of Barr v. Matteo "statements which are neither strictly authorized by, nor in furtherance of, some rule or regulation may nevertheless be in line of official duty, hence privileged, if they are deemed appropriate to the exercise of the utterer's office or station." 275 F.2d at 278. Measured by this standard, we have no doubt that the statements challenged here, which were made in response to a newspaper request for comment upon the implications of Air Force negligence contained in appellant's quoted charges with respect to a unit assigned to appellee's base, were "an appropriate exercise of the discretion which an officer of [appellee's] rank must possess if the public service is to function effectively." Barr v. Matteo, supra, 360 U.S. at 575, 79 S.Ct. at 1341, 3 L.Ed. 2d 1434. We conclude that, under the circumstances of their issuance, appellee's statements were well within the "outer perimeter" of his line of duty, and therefore within the protection of the asserted privilege.

Only one other question is raised on this appeal. Appellant appears to suggest that the privilege asserted by appellee protects only statements of fact and not expressions of opinion, or comment. More specifically, he asserts that appellee's use of such words as "irresponsible" and "distortions of the fact," and the reference to grieving families, was an attack upon him personally, and, as such, outside the privilege. We do not agree with appellant's interpretation. Appellee's characterizations related to appellant's charges, not to his character. As such, they clearly related to the matter in dispute and were well within the range of fair comment upon the matters appellee was privileged to publish. A privilege is not lost by its forceful exercise. Cf., Beauharnais v. Pittsburgh Courier Publishing Co., 243 F.2d 705 (7th Cir. 1957); Hartmann v. Boston Herald-Traveler Corp., 323 Mass. 56, 61, 80 N.E.2d 16, 19 (1948). We intimate no view as to whether the privilege accorded a government official by Barr and Howard would permit a collateral personal attack upon the party he is seeking to answer when the latter's character is not itself directly in issue. Cf., Union Mutual Life Ins. Co. v. Thomas, 83 Fed. 803

(9th Cir. 1897); Sacks v. Stecker, 60 F.2d 73 (2d Cir. 1932).

We hold that the statements made were absolutely privileged, and affirm the judgment of the district court.

Judgment will be entered affirming the judgment of the district court.