### Northern District
### No. 5753
### SANFORD M. AUTOR
### v.
### AUTO IMPORTS, INC.
### July 10, 1964

*Present*: Brooks, P. J., Eno & Connolly, JJ.

Case tried to *Mayberry, J.* in the District Court of Newton. No. 6797.

*Brooks, P. J.* This is an action of contract to recover damages from defendant, a car dealer, arising out of the sale to plaintiff of a Peugeot automobile. The declaration is in three counts,—all of which allege breach of

express and implied warranties of market-
ability. The answer is general denial, failure
of plaintiff to give seasonable notice of the
breach of warranty and failure of plaintiff
seasonably to exercise his rights under the
contract of sale.

The evidence presented in the report is
voluminous and conflicting. Plaintiff, in brief,
testified that he went to defendant's place of
business around the middle of October, 1961
and told defendant's salesman that he was
interested in purchasing a Peugeot car, model
403. He was shown both models 403 and 404
which he examined. In the case of model
403, he opened the hood, looked at the engine,
opened the trunk and looked at the under-
sides of the car.

A few days later plaintiff went again to
defendant's premises, was shown the "new
cars", made the same examination as before
particularly of model 403 which he had
decided to buy. Plaintiff agreed to take a
blue-colored car and to pay $2,087.50. The
parties executed a sales agreement, plaintiff
deposited $50.00 and the sales manager, one
Barrett, promised that the car would be ready
for delivery on November 7.

On *November 7*, at about 8:30 p.m., plain-
tiff accompanied by his wife went to pick
up the car which was standing outside de-
fendant's premises. It was dark outside but
light was coming from defendant's building
and gas pump lights. Plaintiff paid the bal-
ance due on the car, got in with his wife

and was driven by one of defendant's salesmen, Mr. Lapido, to the pumps for gas.

Plaintiff observed that the upholstery on the inside of the doors of the car was faded and yellow which Lapido explained was caused by the fluorescent lights at the gas pump. Plaintiff complained about the illumination of the car radio which Barrett agreed to replace. Thereupon plaintiff and his wife drove the car home.

Because of unfamiliarity with the car, plaintiff did not begin to drive to work in the Peugeot until *November* 13, at which time he observed the following defects:

1. Numerous metal places on the body of the car, the engine, and the underside were rusted and corroded. This rusting and corrosion appeared among other places on the brake drums, the tie rods, the edges of the trunk lid, the top and bottom of the trunk rim and handle, the license plate light, the screws and nuts on the doors, the screws on the stainless steel runners, the thresholds of the doors, the rim of the sunroof, the gutters on the roof, the unpainted engine surfaces, and the bolts, nuts and operating parts of the engine.
2. The aluminum and die cast surfaces on the engine, including the valve lock and lock cylinders, were badly pitted.
3. The rubber gasketing and weather stripping throughout the car was cracked and corroded, including the

gasketing around the front and rear windshields, the trunk, handles, and doors. The rubber connector shields in the engine were similarly cracked and corroded.

4. The upholstery on the inside of the doors was faded and yellow, the remaining upholstery in the interior being gray.

5. The floor carpeting did not fit and porperly cover the floor.

6. The right rear door wouldn't open from the inside.

7. The hood rattled.

8. The radio was placed so you couldn't see the dial while driving.

Thereafter plaintiff had trouble at different times starting the car. Plaintiff also called the attention of defendant to a list of defects substantially as above stated.

On *November* 17 plaintiff went to defendant's place of business and talked with defendant's representative and asked for a refund of the purchase price or a new car replacement. His request was refused. Plaintiff then went to the premises of Renault Distributors who had sold the car to defendant and complained to one Hurley, customer relations man for Renault. Hurley, after telephoning defendant, informed plaintiff that defendant would not take the car back, but that the Peugeot company would do everything to fix up the car.

Thereafter plaintiff consulted counsel and

on *November* 22 a letter was sent by counsel to defendant. Action was commenced *November* 29. On January 23, 1962 plaintiff's counsel wrote to defendant's counsel. Both letters were offered in evidence but were not set forth in the report.

After endeavoring unsuccessfully to sell the car to several dealers, plaintiff finally sold it on March 24, 1962 to one Danburg, a dealer in Waltham for $1,350.00. There was no material change in the condition of the car at that time from its condition on November 7, 1961.

The purchaser, qualified to testify as to car values, testified that the fair market value of the car on November 7, 1961 was $1,351.00 and that it was the same value on March 24, 1962. He testified that the car was not in new car condition and was rusted.

One Harris testified that he was president of defendant company which had purchased the car from Renault Distributors on *November* 3, 1961. He was unfamiliar with the condition of the car.

Barrett testified that the car sold to plaintiff was a "fine car." Hurley, above named, testified that he examined the car and observed the rust and other defects pointed out by plaintiff.

Plaintiff submitted requests for rulings on which the court acted as follows:

1. The evidence requires a finding that the defendant made an express warranty that the automobile is new. *Denied.*

2. The evidence warrants a finding that the defendant made an express warranty that the automobile was new. *Allowed.*

3. The evidence requires a finding that the defendant made an express warranty that the automobile would conform to samples of other automobiles shown to the plaintiff. *Allowed.*

4. The evidence warrants a finding that the defendant made an express warranty that the automobile would conform to samples other automobiles shown to the plaintiff. *Allowed.*

5. The evidence requires a finding that there was implied warranty by the defendant that the automobile was merchantable. *Allowed.*

6. The evidence warrants a finding that there was an implied warranty by the defendant that the automobile was merchantable. *Allowed.*

7. The evidence requires a finding that the automobile was not new. *Denied.*

8. The evidence warrants a finding that the automobile was not new. *Allowed.*

9. The evidence requires a finding that the automobile did not conform to samples of other automobiles shown to the plaintiff. *Denied.*

10. The evidence warrants a finding that the automobile did not conform to samples of other automobiles shown to the plaintiff. *Allowed.*

11. The evidence requires a finding that the automobile was not merchantable. *Denied.*

12. The evidence warrants a finding that the automobile was not merchantable. *Allowed.*

13. The evidence requires a finding that the plaintiff seasonably notified the defendant of the breaches of contract. *Denied.*

14. The evidence warrants a finding that the plaintiff seasonably notified the defendant of the breaches of contract. *Allowed.*

15. The evidence requires a finding that the plaintiff made an effective rejection of the automobile. *Denied.*

16. The evidence warrants a finding that the plaintiff made an effective rejection of the automobile. *Allowed.*

17. The evidence requires a finding that if the plaintiff accepted the automobile, he made an effective revocation of such acceptance. *Denied.*

18. The evidence warrants a finding that if the plaintiff accepted the automobile, he made an effective revocation of such acceptance. *Allowed.*

19. The evidence requires a finding that the breaches of contract by the defendant resulted in substantial impairment of the value of the automobile to the plaintiff. *Denied.*

20. The evidence warrants a finding that the breaches of contract by the defendant resulted in substantial impairment of the value of the automobile to the plaintiff. *Allowed.*

21. The evidence requires a finding that the automobile did not conform to the contract of sale. *Denied.*

22. If the plaintiff made an effective rejection

or revocation of the acceptance of the automobile, he is entitled to recover the purchase price paid (c. 106, §2-711) subject to a credit to the defendant of the proceeds received by the buyer upon resale (c. 106, §2-711 (3) and §706 (6) ). *Denied.*

The trial judge made the following findings of fact and rulings of law:

"The plaintiff purchased a motor vehicle from the defendant. The automobile, which was purchased, was delivered to the plaintiff and was a new automobile. It conformed to the description and was in good condition. The defendant did all that it should in connection with the sale and delivery, and did not, in any way, break any of the terms of the contract.

"The court finds for the defendant."

The trial judge became ill and was unable to pass on the report which was established by the Appellate Division. The report contained all the evidence material to the questions reported.

Plaintiff claimed to be aggrieved by the court's rulings on those of his requests which were denied.

This court is primarily interested in the judge's denial of defendant's requests for rulings ##1, 7, 9, 11, 19 and 21. These are requests relating to warranty of condition and merchantability of the car that plaintiff must recover as a matter of law, although several requests were granted calling for rulings that the evidence warranted findings for plaintiff. This poses a problem whether the case before

us presents that rare exception to the general rule where the judge must find for the plaintiff as a matter of law.

Plaintiff has marshalled an impressive list of alleged defects in the automobile testified to by various witnesses. If the trial judge had believed even a small portion of this testimony he could not have found that the car was a new car or a merchantable article, and that there had been no breach of warranty by defendant.

Against this seemingly damaging testimony was a statement by defendant's sales manager that the automobile was a "fine car", a statement totally at variance with testimony of plaintiff's witnesses.

Had the judge ruled that the evidence did not warrant a finding for plaintiff, he would have been clearly wrong. His granting of these requests indicates that he understood this. If we were weighing the testimony quantitatively, the preponderance of the evidence would certainly favor plaintiff.

However, the judge had to consider quality as well as quantity. He was entitled to disbelieve part or all of the testimony presented on plaintiff's behalf. He was entitled to give total credence to testimony presented on behalf of defendant. This he apparently did.

As stated in *MacDonald v. Adamian,* 294 Mass. 187, 191, "The credibility of the witnesses is exclusively for the trial judge." Ordinarily findings of fact made on oral

evidence are not reviewable. *Dolham v. Peterson,* 297 Mass. 479, 481 and *Bandera v. Donahue,* 326 Mass. 563, 564.

The following language was used in *Hartman v. Boston Herald-Traveler Corp.,* 323 Mass. 56, 60:

> "The judge may direct a verdict for one of the parties only where there is no evidence, more than a *scintilla,* upon which a verdict for the other party could rest. When some evidence worthy of consideration is presented the judge must submit the case to the jury even though it may appear to him that the preponderance of the evidence on one side is so great that he would set aside a verdict rendered against such preponderance."

■ Brief as was the characterization of the car was a "fine car", we consider that it was more than a scintilla of evidence so that its acceptance as controlling by the trial court would not amount to error of law. It follows that we find no error in the disposition of the requests for rulings.

*Report Dismissed.*

Palmer, Dodge, Gardner & Bradford, of Boston, for the Plaintiff.

Jerome B. Troy and John J. McDonough, of Boston for the Defendant.