THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, HERMINIO MIRANDA, JR., JUDGE, Respondent.

No. O-67-265. Decided December 16, 1968.

*J. B. Fernández Badillo, Solicitor General, J. F. Rodríguez Rivera, Acting Solicitor General,* and *Lolita Miranda, Assistant Solicitor General,* for petitioner. *Ángel Viera Martínez* for Dr. Arturo González Mena.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The prosecuting attorney of the San Juan Part of the Superior Court preferred three charges for violation of the Income Tax Act against Dr. Arturo González Mena. In the first count: that on April 23, 1963 he filed with the Secretary of the Treasury of Puerto Rico a false and fraudulent income tax return where he stated that his gross income during the taxable year ending on December 31, 1962 was $184,200.84 knowing that his actual gross income during said period was about $300,000 or more; that his taxable net income was $1,638.50, his return showing a tax of $206.45, such facts being false, of which he was aware, since his actual net in-

come for said taxable year was of $116,516.11 or more, the tax amounting to $74,841.12 or more.

In the second count he alleged that on March 24, 1964 Dr. Arturo González Mena filed with the Secretary of the Treasury a false and fraudulent return for the year ending December 31, 1963 where he stated that his gross income during said period was $205,493.17, his actual gross income being about $300,000 or more; he declared a taxable net income of $1,814.45, his return disclosing a tax of $228.44, these facts being false since the actual net income for said period was $109,399.32 or more and the amount of tax to be paid $67,167.96 or more.

In the third count he charged that on March 17, 1965 he filed with the Secretary of the Treasury a false and fraudulent return for the taxable year ending December 31, 1964, where he declared a gross income of $132,323 knowing that his actual gross income during said period was $250,000 or more, and he stated that the taxable net income was none, the amount of delinquent taxes amounting to $35,670.26 or more.

The information was filed on October 31, 1966. The defendant pleaded not guilty and requested a trial by jury. On June 28, 1967 he requested the trial court to order the Secretary of the Treasury to furnish him copy of the report or reports prepared by the Inspectors of the Income Tax Bureau concerning his case, since the Secretary of the Treasury had refused to furnish them. The San Juan Part denied said petition on the ground that such documents were not under the custody of the prosecuting attorney.

On reconsideration defendant invoked the case of *People* v. *Superior Court; Héctor López Cruz, Intervener,* Judgment of June 24, 1960, and alleged that this Court had upheld the right of a defendant to obtain prior to trial the record of autopsy of the pathologist or of the institution which might have it, and to obtain from the Police the photographs taken

by it in connection with the occurrence;[1] that the reports prepared by the Income Tax Bureau were in the same condition as the record of autopsy because they were not a part of the prosecuting attorney's work, they were not sworn statements and were not protected by Rule 95 of the Rules of Criminal Procedure. Moreover, that the Director of the Income Tax Bureau informed him that he had sent to the Department of Justice a report prepared by the Bureau in order to file the corresponding criminal action against the defendant, and that this report was in the hands of the prosecuting attorney.

In the light of these expressions on August 3, 1967 the trial court entered an order stating that the prosecuting attorney had accepted in court that he had under his custody, as part of the record, the report submitted to the Secretary of the Treasury by the Inspectors of the Income Tax Bureau, product of the administrative investigation of this case. The court provided that since said report was one of the documents to which Rule 95 of the Rules of Criminal Procedure refers, copy thereof should be furnished to the defendant or he should be allowed to examine or photograph it. In order to review the foregoing order we issued a writ of certiorari.

The basic question to be considered centers on the nature of the document constituting the report herein involved, in the light of Rule 95 of the Rules of Criminal Procedure of 1963.

---

[1] In *People* v. *Superior Court; Héctor López Cruz, Intervener,* we set aside an Order of the San Juan Part of the Superior Court dated April 1, 1960 requesting the prosecuting attorney to show to the defense the record of autopsy, as well as the photographs taken at the scene of the accident. We held, however, that it would not prejudice the fact that at the request of the defendant, the court could order the institution or person having under its custody said record of autopsy to furnish copy thereof to the defendant. The order appealed from was affirmed insofar as the production by the prosecuting attorney of the photographs taken at the scene of the accident is concerned. At that time Rule 95 of the Rules of Criminal Procedure was not in force.

Rule 95 of the Rules of Criminal Procedure provides:

"On motion of the defendant at any time after the filing of the information, the court may order the prosecution to permit the inspection and copying or photographing by the defendant or his attorney, of any designated objects, books, *documents and papers,* not affidavits, with the exception of the testimony of the defendant himself, that The People might have obtained from the defendant *or from other persons* by means of a judicial order *or otherwise* and which might be necessary for the preparation of his defense, irrespective of whether The People proposes to offer them in evidence or whether they are admissible in evidence. The order shall specify the time, place and manner of making the inspection, taking the copies or the photographs and may prescribe such terms and conditions as the court may deem just." (Italics ours.)

The above-copied rule comes virtually from Rule 16 of the Federal Rules of Criminal Procedure adopted March 21, 1946.[2]

Comparing both rules, before amendment of Rule 16 as of July 1, 1966, two differences pertinent herein are noted: The Federal Rule did not exclude from the discovery under the terms "papers" and "documents," the affidavits which the prosecuting attorney had in his possession. On the other hand, Rule 16 permitted the discovery of objects, books, documents, and papers obtained from the defendant himself, and those obtained from other persons, only by virtue of seizure or process.

---

[2] 18 U.S.C.A.—Rules, p. 353:

"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect, and copy or photograph designated books, *papers, documents* or tangible objects, obtained from or belonging to the defendant or obtained *from others by seizure or by process,* upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just." (Italics ours.)

When adopted in 1963, Rule 95 departed from the Federal Rule 16, before the latter was amended at length effective July 1, 1966.—18 U.S.C.A., Rules, 1967 Cum. Ann. Pocket Part, p. 175.—Rule 95 was patterned on the policy of Public Law 85–269 of September 2, 1957—71 Stat. 595—commonly known as the Jencks Law because it was a legislation provoked by *Jencks* v. *United States*, 353 U.S. 657, decided on June 3, 1957. Rule 95 excluded from the discovery, under the concept of "documents" and "papers," the affidavits which, for defendant's benefit, were not excluded in Federal Rule 16 when the latter was adopted.

In excluding the affidavits, Rule 95 made exception of the testimony of the defendant himself, and there it followed our ruling laid down in *People* v. *Superior Court*, 80 P.R.R. 679, decided in 1958, where, speaking through Mr. Justice Hernández Matos this Court had already acknowledged that right of the defendant.[3]

---

[3] Historically, the Law of Criminal Procedure for Cuba and Puerto Rico which became effective on January 1, 1889, provided that the proceedings of the *sumario* conducted by the examining judge were secret, with several exceptions in the course of said proceedings in which the presumed defendant had a right to intervene by himself or by representation of the counsel he selected or that assigned him by the court at his request. Articles 299, 301, 333, 336, 350.

But after the *sumario* was concluded by the examining judge, if the case was not dismissed, the defendant had the right to examine the letters, books, papers, and other evidentiary matter for the prosecution of the *sumario*, before the oral trial commenced.

From the expression contained in § 11 of the Code of Criminal Procedure of 1902 to the effect that "the examination of witnesses by the prosecuting attorney as provided for in section 3 must be in private," we have maintained with much firmness until the present time the secret character of the district attorney's record, except certain recent incursions in said record permitted by the decision of *Jencks*, which we adopted as our rule, and by Rule 95, in addition to the revelation of the secret which we made in *People* v. *Superior Court*, afore-cited.

The tendency at present, however, is towards a slackening of the iron-clad rule of the secret. But now we must follow the positive law which governs our function, and the rest remains for the action of the bodies in charge of revising the legislation.

On the other hand, Rule 95 permitted the discovery, unlike Federal Rule 16, of material that The People might have obtained from other persons by means of a judicial order *or otherwise*. Rule 16 limited itself to the judicial process.

After the decision of *Jencks*, and the subsequent legislation which originated therefrom, the concepts of the discovery under Rule 16 and under the *Jencks* rule have been interlaced. In fact, Public Law 85–269 of 1957 indirectly had the effect of limiting Federal Rule 16, which did not exclude affidavits, although it was not a legislation amending said Rule.

The aforesaid Law, which became § 3500 added to Chapter 223 of Title 18, provides that in any criminal prosecution brought by the United States, no statement or *report* in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpena, discovery, or inspection *until said witness has testified on direct examination in the trial of the case*. The law establishes then a mechanism concerning the manner of handling in court said statement or report in the light of other factors involved.

The portion of § 3500—Law 85–269—which prohibits the discovery stated in the foregoing paragraph was made a part of Rule 16 itself as of July 1, 1966, which now prohibits the discovery or inspection of *reports, memoranda, or other internal government documents* made by government *agents*, in connection with *the investigation of the case* except as provided in § 3500, that is, until the government witness has testified on direct examination in court.

The report which the defendant desires to inspect and to be furnished to him is not, according to the record, a sworn statement made by a witness. If it were, it would be excluded by Rule 95. Neither is it a sworn statement

made by defendant. However, Rule 95 is not confined to affidavits, but it also mentions "documents" and "papers." The point to consider is whether the report constitutes such document or paper within the meaning of the Rule, and in the light of other considerations to be taken into account.

By way of illustration we shall comment the case of *Palermo* v. *United States,* 360 U.S. 343. It was decided on June 22, 1959, subsequent to Law 85–269 of 1957. This was a case of knowingly evading the payment of income taxes, where there was a conviction. The taxpayer was accused of not including in his returns for the years 1951 and 1952 substantial amounts of dividends. Among the Government's exhibits at trial there was a record, presumably contemporaneous and in defendant's handwriting establishing the receipt of dividends in an amount substantially larger.

Defendant's defense was that he had turned over this record to an accounting firm while it was preparing his returns. The Government's contention was that he turned over the record to the accounting firm subsequent to the initiation of the investigation. The issue raised an essential fact of the defense as to whether or not an evasion was knowingly and willfully committed.

The accountant testified at the trial that he had received the record, as the Government said, after the investigation. Prior to the trial he had testified before [revenue] agents and executed an affidavit reaffirming the date of the delivery. On that occasion a *"memorandum"* of the conference between the accountant and the agents was made, when the accountant executed his affidavit.

After the direct testimony in court of the witness, the defendant requested production of the *"memorandum"* of the conference or any part thereof summarizing what the accountant had said. This request was denied. The Supreme Court did not find the denial erroneous and affirmed the conviction.

In the analysis he makes of the problem Mr. Justice Frankfurter states that one of the most important reasons for the adoption of the statute of 1957 (§ 3500) was the strong fear that the *Jencks* decision would compel the disclosure of agents' summaries of interviews with witnesses regardless of the character of such summaries. He says that not only was it feared that disclosure of *memoranda* containing the *interpretations and impressions* might reveal the inner workings of the investigative process injuring the national interest, but it would be grossly unfair to allow the defense to impeach a witness with a statement which was not *his own*, but the product of the investigator's selections, interpretations and interpolations. (360 U.S. at p. 350.) The court then refers to the meaning of the term "statement" under the statute in question, and concludes that the "memorandum" requested was not such document, as one of those which the law permitted to be furnished to defendant once the witness had rendered his direct testimony in court.[4]

The *Palermo's* decision, as it may be seen, does not involve the discovery prior to trial of Rule 95, which is the case at bar. However, the philosophy of public law or public policy and the reason for which a "memorandum" or "work" or "report" of a government's agent made and circulated within the departmental sphere is excluded from the rule of law which allows the inspection, is the same philosophy of public

---

[4] Section 3500, Title 18, provides that (e) the term statement in relation to any witness called by the United States means:

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement. See *Palermo v. United States, supra; cf. Ogden v. United States*, 303 F.2d 724 (9th Cir. 1962); *United States v. Rothman*, 179 F.Supp. 935; *Ogden v. United States*, 323 F.2d 818, *cert. den.*, 376 U.S. 973; *Walsh v. United States*, 371 F.2d 436 (1st Cir. 1967).

policy and the same reason, whether it involves discovery prior to trial, or during the trial for purposes of impeachment. Only that when the latter is involved, the court could allow the production of evidentiary matters in the report which could be used for impeachment, under due supervision by the judge.

 The plaintiff here is The People of Puerto Rico. Whether or not the report of the Inspector or Inspectors of the Income Tax Bureau constitutes a paper or document obtained by *"The People"* from *"other persons,"* as Rule 95 reads, *quaere*. We shall not stop to analyze further whether or not the Income Tax Bureau is a different person from The People because the case is decided by more substantial considerations.

Separately from the regime of the Rules, § 48 of the Law of Evidence provides that a public officer is bound to furnish, on demand, a certified copy of a public document under his custody. The preceding § 47 grants to every citizen the right to inspect and take a copy of any public document, except as otherwise provided by law. But § 45 establishes that public documents are such as are specified in § 1184 of the Civil Code (§ 1170, 1930 ed.) and all other writings— § 46—are private documents.[5]

 Beyond question, in the light of § 1170 of the Civil Code, 1930 ed., a report, memorandum, or writing prepared by an employee or officer in the exercise of the duties of his position or employment for his superior or for internal purposes of the departmental decisions and actions are not public documents which, pursuant to § 47 of the Law of Evidence every citizen has a right to inspect. It has been

---

[5] Section 1170 of the Civil Code:

"Public instruments are those authenticated by a notary or by a competent public official, with the formalities required by law."

Section 49 of the Law of Evidence divides public documents into 4 classes: 1.—Laws; 2.—Judicial records; 3.—Other official documents; 4.—Public records kept in Puerto Rico of public or private documents.

thus interpreted also by the Secretary of Justice in his Opinion of January 8, 1964, XXXV Opinions of the Secretary of Justice 18. See former opinions of April 29, 1957—Vol. XXVIII; January 5, 1942 and that of July 26, 1946.

In a different aspect from the one at bar, but which without doubt helps to fix the special position of documents prepared and distributed in the course of the position or employment by an officer or employee for internal purposes of the government's agency or department we can mention, likewise, by way of illustration, decisions such as *Barr* v. *Matteo*, 360 U.S. 564; *Howard* v. *Lyons*, 360 U.S. 593; *Denman* v. *White*, 316 F.2d 524 (1st Cir. 1963) ; *Pagano* v. *Martin*, 275 F.Supp. 498 and cases cited therein.

In these cases it was considered that documents originated in the course of the discharge of the position or employment and forwarded through official channels for official purposes enjoyed absolute privilege, with complete immunity for their authors against claims for libel or defamation; despite the fact that in some of those cases the officer made some disclosure outside the departmental channels. As it is said in *Matteo*, the privilege is not a badge or emolument of exaulted office, but an expression of a policy designed to aid in the effective functioning of government. (360 U.S. at p. 572.)

The report of the Inspector or Inspectors of the Income Tax Bureau herein involved, prepared in the discharge of their duties and submitted to his or their Superior, the Secretary of the Treasury for the latter's determinations, may probably have proper evidentiary matter to be introduced at the trial. But beyond question it contains other matters which are not evidentiary, such as the interpretations made by those officers of certain facts, their subjective conclusions of such facts, as well as their conclusions in accordance with the tax act they administer, and insofar as the criminal action is concerned, it may also contain the method

of work or the approach, or strategy of the officers of The People to support the information.

In the case at bar the foregoing gains more force inasmuch as an ordinary criminal case is not involved, but one which deals with the violation of a very technical and specialized law.

■ For reasons of public policy; because it would affect the effective operation of the government and would preclude the officers from acting with complete freedom and integrity, without any fear or inhibition in the preparation of reports, memoranda or other expressions or communications in the course of the discharge of their duties, for departmental purposes, we must conclude that the report sought herein, *as such*, is not subject to inspection under Rule 95 as a "document" or "paper" obtained by The People, from another person.

■ The foregoing conclusion does not affect in any manner the right of the defendant to obtain, by way of a broad bill of particulars (see Rules 39 and 64 (d) ), all the information concerning *facts* necessary for the preparation of his defense, and specifically: the source of each item of gross income which the information charges against him in excess of that disclosed in the returns, as well as each item of the gross income that The People rejected as admissible deduction and which produced the larger net income charged in the information, and any other information *of fact* connected with the foregoing. Neither does this decision anticipate the view of the Court with respect to the civil sphere.

Notwithstanding the reference by way of illustration we made of *Palermo*, at this moment we do not express opinion as to the proper action in case that in the course of the trial the Inspectors in question would testify on any evidentiary matter which might exist in the report and for purposes of impeachment. If the question arises, then the judge shall set

up such degree of necessary supervision on the inspection as will adequately protect the rights of all the interests involved.

Without prejudicing the right of information previously acknowledged to defendant, the order of the San Juan Part of the Superior Court of August 3, 1967, object of this petition, is set aside.