Rup, Mary-Lou, J.
The plaintiff brought this action, claiming the defendant’s negligent maintenance of a basement stairway caused him to fall and suffer injuries. The trial jury, answering special verdict questions, found the defendants negligent, but also found that their negligence was not a contributing cause of the plaintiffs injuries and/or losses. The plaintiff now moves for judgment notwithstanding the verdict, or alternatively for new trial pursuant to Mass.R.Civ.P. 59(a). For the reasons set forth below, the plaintiffs motion for new trial will be allowed.
DISCUSSION
The evidence at trial was as follows. The plaintiff, Francis Leahy, is an officer with the Massachusetts State Police. On the afternoon of January 31, 2002, he and other law enforcement officers went to 330 Greenwood Street, Worcester, MA, rental housing owned by the defendants, to execute a search warrant. The target of the warrant was the tenant. The defendants did not reside at the premises and had no connection with alleged narcotics activities there. While descending a stairway in order to search the basement of the premises, the plaintiff fell and was seriously injured. During trial, witnesses described the condition of the stairway as follows: (1) steep; (2) one side of the stairway (the right side as one descended) had a handrail that ended partway down the stairway; (3) the other side of the stairway (the left side) had no handrail; (4) a white or light-in-color bed sheet hung from the basement ceiling to the floor and along that other side of the stairway (the left side as one descended), giving the appearance of a wall; and (5) dim lighting in the basement.
The plaintiff and another witness testified that the plaintiff descended the stairway slowly and cautiously, holding his handgun with both hands, because he did not know if he would encounter anyone in the basement. While doing so, he was shouting “Police! Search warrant! Come out!” and was in a crouched position in order to limit the amount of his body that might act as a target and to enable him to see into the basement. One light bulb, located to the right rear of the basement, provided dim illumination. As he visually surveyed the basement area to the right side of the stairway, the plaintiff descended with his back to what he believed to be a wall on the left side. That wall was, in fact, the bed sheet. When he was approximately halfway down the stairway, the plaintiff leaned to brace himself against what he believed was a wall, lost his balance and fell to the basement floor. The plaintiff and another witness opined that if there had been a handrail on the left side of the stairway it would have stopped his fall. The evidence showed that the plaintiff suffered significant injuiy and that he was unable to return to work for fifty weeks. At trial, the plaintiff argued that the steep stairway, basement lighting, the absent left-side hand rail and the hanging bed sheet created an unsafe condition, constituting negligence by the defendants.
The crux of the defense was that the defendants bore no responsibility for the plaintiffs fall. The premises (including the basement and its stairs) passed inspection when the defendants purchased it in 1997, and the basement remained in the same condition thereafter. The tenant, his wife and four-year-old daughter rented the premises twenty months before the plaintiffs fall, paid their rent and made no complaints about the apartment, the basement or its stairway. The defendants had no knowledge of the tenant’s alleged narcotics activities. They knew nothing about the bed sheet next to the stairway and had no role in hanging it there. The basement had adequate lighting with four light fixtures & bulbs in each comer. The defendants argued that the provision of lighting, the condition of the stairway, and the absence of a handrail on the left side of the stairway did not amount to negligence.
After two days deliberation, the jurors gave the following responses to special verdict questions:
(1) Were the defendants Nydia Febo and Pablo Febo negligent? Yes.
(2) Was the defendants’ negligent conduct a contributing cause of the [sic] Francis D. Leahy’s injuries and/or losses? No.
*200 The plaintiff now moves for judgment notwithstanding the verdict or for a new trial, pursuant to Mass.RCiv.P. 59(a), arguing: (1) the jurors’ answer to the causation question was inconsistent with the trial testimony and instructions on the law; and (2) an interaction between two jurors warrants a new trial. He also moves that the court produce a copy of a special verdict questionnaire that the jurors did not return and written juiy instructions submitted to the jurors.
DISCUSSION
I. Motion for Judgment Notwithstanding the Verdict
The defendants’ assertion that the plaintiff is not entitled to relief pursuant to Mass.RCiv.P. 50(b) because he did not move for a directed verdict either at the close of his own evidence or at the end of all the evidence is correct. The motion is denied on that ground.
II. Motion for New Trial
A. Against the weight of the evidence
Granting or denying a motion for new trial based on grounds that the verdict was against the weight of the evidence is left to the sound discretion of the trial judge. Phachansiri v. Lowell, 35 Mass. 576, 579 (1993). The applicable standard requires that the judge “necessarily consider the probative force of the evidence” in ruling on the motion. O’Brien v. Pearson, 449 Mass. 377, 384 (2007). “The judge should only set aside a verdict as against the weight of the evidence when it is determined that the juiy ‘failed to exercise an honest and reasonable judgment in accordance with controlling principles of law.’ ” Id., at 384, quoting Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 520, cert. denied, 493 U.S. 894 (1989), quoting Hartmann v. Boston Herald-Traveler Corp., 323 Mass. 56, 60 (1948). “[The] judge should exercise this discretion only when the verdict ‘is so greatly against the weight of the evidence as to induce in [her] mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice.’ ’’ Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 127 (1992), quoting Scannell v. Boston Elevated Ry., 208 Mass. 513, 514 (1911).
During trial, the parties’ primary focus was on whether it was negligent to maintain the basement stairway in the condition that the plaintiff encountered on January 31,2002, and, if so, whether the defendants bore responsibility for the unsafe condition. The defendants did not dispute that the plaintiff suffered injuries and economic losses as a result of his fall.
Neither party objected to the special verdict questionnaire. As submitted to the jury, it sought only affirmative or negative responses as to whether the defendants were negligent and, if so, whether the negligence was a contributing cause of the plaintiffs damages. The questionnaire did not require that jurors address each specific act of negligence alleged by the plaintiff.
In opposition to the plaintiffs request for new trial, the defendants assert that the jurors could have based their finding of negligence on the steepness of the stairway and/or poor lighting in the basement (rather than the presence of the bed sheet and/or the absence of the left-side hand rail) and, further, could have determined that either or both of those conditions were not a substantial contributing cause of the plaintiffs damages. They also argue that even if the jurors based their negligence finding on the presence of the bed sheet and the lack of a hand rail, “the jury was free to conclude that the issue of whether the presence of a railing would have necessarily prevented the fall remained sufficiently in doubt that it did not constitute a substantial contributing factor to the plaintiffs injuries.”
In my view, upon consideration of the probative force of the evidence presented during this trial, see O’Brien v. Pearson, supra at 384, it appears that the jury failed to exercise an honest and reasonable judgment in accordance with controlling legal principles and my instructions on causation. The defendants did not challenge the fact that the plaintiffs fall caused his injuries. No credible evidence suggested that the plaintiffs fall occurred other than as he described. The weight of the evidence suggested that he fell as a result of bracing himself against what he erroneously believed to be a wall. Even though, as worded, the special verdict questionnaire leaves unanswered the specific basis for the juiy’s finding of negligence, the probative force of the evidence would suggest that the jury based its finding of negligence on the bed sheet and/or the absent hand rail. The jury would have been well-warranted in finding negligence where a bed sheet hung — ceiling to floor — immediately adjacent to a stairway, so that one descending the stairs might reasonably mistake it for a wall. Testimony that a railing behind the bed sheet would have prevented the plaintiffs fall was not, as the defendants characterize it, merely “speculative,” but a reasonable and warranted inference that the jurors could accept and draw from the evidence. The defendants made no significant challenge to the plaintiffs opinion that a hand rail would have prevented his fall. They offered no evidence suggesting that a hand rail would not have prevented the plaintiffs fall.
On this ground, allowance of the plaintiffs request for new trial is in order.
B. Interaction between jurors
Even though I allow the plaintiffs motion for the reasons discussed above, I address his other grounds.
The jury deliberated over two days. At the end of the first day, following suspension of juiy deliberations, a court officer advised me that a female juror had advised the court officer that another juror had “assaulted” her. The court officer reported the matter to me after other jurors had left the area and, as I recall, after one or all of the attorneys had left the courtroom. On the second day, prior to ordering resumption of deliberations, I inquired of the complaining juror (a young woman) who reported that an older woman juror (whom she identified) *201 had called her “inexperienced in life” and a “racist,” yelled at her, and grabbed her in the shoulder area and pushed her downward into her chair. The juror reported that she responded by telling the other juror not to attack or touch her. The juror advised me that she could remain independent despite the incident. She stated that she did not wish to be excused and only wanted the court to be aware of the other juror’s behavior. Her responses and demeanor satisfied me that the juror could remain objective and render an independent decision in the case. Neither attorney requested that the reporting juror be excused. They agreed that I not inquire of the other juror or jurors. Before having them resume deliberations, I instructed all jurors to listen with respect to each other’s opinions even if they differed. Neither counsel objected to that procedure or to my instruction.
In his motion, the plaintiff argues that “the physical and verbal assault” by one juror upon another juror “who was presumably favorable to the Plaintiff’ warrants granting him a new trial. Specifically, the plaintiff asserts that the court can reasonably conclude that the younger juror “was arguing against the Defendant, who is Colombian, and was called a racist.” He also argues that even though a majoriiy of the jury “ultimately sided with the Defendant” (presumably with regard to their response to special verdict question 2), and the younger juror “was probably, at some point at least, in the minority,” as a consequence, “the means by which the jury reached its verdict remains toxic and goes far beyond acceptable jury recourse.” He asserts that “[t]o repress and silence a juror in the manner alleged must require a new trial in this case.” (Italics in original.)
The plaintiff presents nothing to support his allegations of juror coercion and misconduct, and bases them on nothing more than speculation. His motion is denied on this ground.
III. Request for Jury Instructions and First Verdict Slip
The plaintiff requests that the court produce to him a copy of the “jury instructions document” submitted to jurors. During their deliberations, jurors requested a definition of negligence. With agreement of counsel, I sent into the jury a transcript of that portion of my jury charge. That transcribed portion of my charge is part of the court record and available to counsel.
The plaintiff also requests that the court produce a copy of an “unretumed verdict slip.” During deliberations, jurors requested a new “verdict sheet.” In response, I sent another special verdict questionnaire to jurors and instructed that they draw a line through the original verdict questionnaire and place it in a sealed envelope, where it remains. The plaintiffs assertion that the original verdict questionnaire will somehow support his grounds for new trial is based on conjecture and without merit. Furthermore, production of the original questionnaire could impermissibly intrude into the deliberative processes of the juiy. Cf. Commonwealth v. Fidler, 377 Mass. 192, 196 (1979) (“We still adhere to our rule which requires courts to protect jurors and their verdicts from unwarranted intrusions and which emphasizes the importance of the finality of jury verdicts”). The plaintiffs request for a copy of the original questionnaire is denied.
ORDER
For the reasons set forth above, it is hereby ordered as follows:
(1) So much of the plaintiffs motion as seeks judgment notwithstanding the verdict is denied and so much of his motion as seeks a new trial is allowed.
(2) The plaintiffs request for jury instructions and first verdict slip is denied as to the original verdict questionnaire. The plaintiff may review the portion of jury instructions which have been marked for identification and are part of the record of the trial.